The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit.  Dr. Wheeler and the Black Lung Unit believe they were above the law. Now they ask this court to confirm that for them. The Black Lung Benefit Act creates clear, specific rules for the interpretation of the relevant chest x-rays. The Black Lung Benefit Act creates clear, specific rules for the interpretation of these chest x-rays. Dr. Wheeler and the Black Lung Unit knew that, they disregarded the law, they substituted their own more restrictive method for interpreting these chest x-rays, and they succeeded in denying what were clearly earned federal benefits. The district court dismissed the case because of the witness immunity, but the witness immunity should not be a shield for these defendants in these acts. The Black Lung Benefit Act is a remedial statute that's implemented through a series of regulations, federal regulations. The most important of these touch on the adoption of the International Labor Organization classification system. The idea is to make the interpretation of these films uniform. 20 CFR 718-102D. Where are you getting all this from? The cause of action and the abrogation of the normal immunity that witnesses have when they testify on a judicial or quasi-judicial proceeding. I mean, I don't understand, it would help me because I don't understand where all this is coming from. Where am I getting the causes of action from? Yeah, or the abrogation. I think we get it from, some of it is in Briscoe. The Briscoe opinion certainly talks about the ability to have... We're talking about federal and state immunity. Where do you get the abrogation of federal immunity? Statutes may abrogate common law, is what we're saying. The Briscoes, in the Briscoe case, the Supreme Court, in the Apple case, acknowledged that as well. And so what we're saying is that Congress... Well, the Briscoe case recognized the immunity. For 1983 claims they did. That's true, Your Honor. And so what we said is... Is there anything in the Supreme Court case, Briscoe or any other, that says witnesses don't have immunity when they testify in a proceeding? The Briscoe case, in talking about the 1985 section, did say that, Your Honor. It said it would be that the Congress had evidenced an intent and the statute was incompatible with the witness immunity. And Congress has the power to create those causes of actions and to give people remedies where none previously existed. You're saying they've done that here? There's nothing... I know of no case, and I don't think anyone has cited a case where the witness immunity... How about Briscoe recognized immunity? Generally speaking, yes. I don't deny that, Your Honor. Briscoe recognized an immunity, a governmental immunity, for government contractors, but I don't see anything in Briscoe which indicates that the Supreme Court is willing to take what is a fairly radical step of abrogating witnesses when they come into a judicial proceeding to testify. Are you going to subject them to a damages action? I mean, this is a game that both plaintiffs and defendants can play. I mean, in this case, you're strafing the defendant's witnesses, but in other cases, the defendants are going to be strafing the plaintiff's witnesses, and then the collateral attacks are going to go on and on, and expert witnesses, which, you know, they're not on the subpoena most of the time, and they don't have to testify. They're going to say, you know, why bother? Where did these people testify? Where did they testify? They didn't testify in any judicial proceedings, did they? No, it's an administrative proceeding. Did they testify, or did they just put somebody... flopped their report up on the table? Most commonly, they flopped the report up on the table. That's what I thought. So, in other words, they didn't testify. On very rare occasions would they be called to testify, usually by the co-operator themselves, to explain their opinions. Was the report, was there an affidavit that went with the report, or under oath? I mean, when it was flopped up on the table, it has to be admitted into evidence somehow. Right. It's signed as a bereading report... By Dr. Wheeler. By Dr. Wheeler. And there's no affidavit? Correct. It's signed a report, and it entered of its own weight. I mean, it's there. Correct. It's in evidence. Right. But I thought you were going after... That's the way it works. So, how do we get into all we're talking about here is witness immunity. They don't even need a witness. Well, the argument has been that anything... I know they're making that argument, but I don't know why you're not arguing how does a witness immunity come in? There's no judicial proceeding. Nobody came in, held up their hand and swore to tell the truth, and got up there and testified. It's a good point, Your Honor. Well, go ahead. I don't know if I'm making any point. I'm just asking a question. Right. And you're saying that the reports are fraudulent. Correct, Your Honor. You're saying the reports are fraudulent, and that people lost their black lung benefits. Correct. Coal miners, underground coal miners, from my state of these false reports. That's right, Your Honor. I think that's sort of what the complaint is. And you allege fraud under Maryland law and RICO. Correct. Well, the complaint is attacking Dr. Wheeler for false testimony. The complaint attacks him for not using this ILO system, and for submitting the reports in contravention of the regulations, and for the fact that he knew that when he did it. But a big part of the complaint has to do with false testimony. I don't think we allege that he testified under oath and deposition in any of my client's cases. I don't think that was, we talked about his interpretation of the films, and the fact that he signed the B reading form, and submitted it, and it was used to take away the black lung benefits that were earned by my clients in the class. So the ILO system incorporates this, is incorporated into the Black Lung Benefits Act. And when people, whether it's the district director or the benefits review board, they are all presuming that people are following this system, because that is what the regulations command. But it's his overall participation in the administrative proceeding, a large part of which is testimony. The proceedings included, the administrative proceedings included witness testimony. Administrative proceedings in which you are challenging Dr. Wheeler's participation, including witness testimony and cross-examination, and discovery, briefing, and argument. So it's essentially his appearance as a participant and significantly a witness in this administrative proceeding before an administrative law judge. And you agree that the immunity attaches to participation in a quasi-judicial proceeding. I can't deny that's the law, your honor. But that's what we're coming after him for, when you look at it as a whole. We're coming about his participation in the ALJ proceeding. Your honor, I am not coming at him for any opinions that he came up with. I'm coming, we brought this case because he knew what the regulations commanded. He admitted that he did not follow them and that resulted in my clients losing significant federal benefits. But we're still getting at the same thing because this, you get to the point that an expert participates through testimony and otherwise in an administrative proceeding and thereafter he's subject to collateral proceedings seeking damages for that participation. And this isn't just going to be brought in cases of fraud, it's going to be a club over everybody's participation in an administrative law proceeding that hanging in the background is going to be this separate collateral action. And the threat of the collateral action is going to be invoked in a lot of instances that are going to stop significantly short of any kind of fraud. I disagree. I think this case is very unique, your honor. This is a, this is a group. Litigants always try to think things are very unique, but unfortunately, or fortunately as the case may be, we have to, we have to look down the road and see where we're going. Well on this case, on these facts, these individuals systematically for years defeated this, not by giving different opinions, not by giving their opinions, but by failing to follow the law. They intentionally undermine this system so that they could, so that they could defeat these black women. What would you say the purpose of the witness litigation privilege is? The real purpose is to protect the civil justice system. That's what they're trying to do. Allow it to work in an unfettered and free way. But that's exactly what, what Dr. Wheeler and his colleagues undermine here. They, they undermine the civil justice system itself and by giving them this witness immunity, we're not promoting that policy. But going back to Judge Wilkinson's point, can't you see a day, perhaps the day after an opinion comes out in your favor, in which the same argument you're making will be made against your expert witnesses in some cases you might have? I mean, I don't have any in particular, I'm not disparaging any of your expert witnesses, but I'm sure opposing counsel will. I mean, I can understand the concern of a parade of horribles and lawsuits that are coming forward. Plaintiffs are going to be savaged by this thing. You can just imagine a, you know, in a judicial proceeding or any kind of proceeding where an expert witness comes and talks about a product, let's take a product's liability, a product's liability case, allow this kind of collateral action to take place. Anytime a corporation doesn't like a plaintiff's product's liability expert, wham, you're going to have a separate collateral action. I mean, this is off, this is off to the races and it always, I had always thought, and the reason courts have been so vigilant about protecting witness immunity, and I think witness immunity would extend to testimony and participation in a case, but we've always had the idea that false testimony would be corrected through cross-examination, and that that was the greatest, you know, the Supreme Court said that's the greatest engine ever invented for the discovery of truth, or it can be, if you don't like Dr. Wheeler, and as far as I know, I don't know anything about the gentleman, but you can disqualify him from subsequent testimony in many black lung cases, and in extreme cases you can bring a perjury prosecution, and there are all kinds of ways to stop this stuff, but to have a collateral civil action, and I don't see the, I don't see the support in the case law for it, either in Maryland law or whatever, I don't see the support in the RICO statute for it. I just don't see that, I don't see the textual support in RICO for it. I don't see the support in the Maryland case law for it, and the reason is you need the privilege and a fairly robust privilege to get people to participate and testify, and we depend on these people and their testimony to reach informed results in the cases before us, and if they're going to be subject to damages action, you're cutting off an avenue of truth for the court system. I don't think that's what I'm doing, your honor. We're here because the truth was undermined here. The truth was undermined. That's what happened here. That's why we're here. We're here because Dr. Wheeler and the black lung unit decided they didn't have to follow the only reason this case would come is because after Dr. Wheeler was done going through this successfully defeating benefits for thousands of individuals and their families, he admitted it. He admitted it to a reporter. That's the only reason we're here. I'm not defending Dr. Wheeler. I don't know the gentleman. I don't know anything about him. I'm not defending him. What I'm saying is that even if what you say is correct, that our cases can make horrible law, and if you look in the Maryland case law and you look at the Supreme Court case law, O'Brien and Briscoe and Adams and others, they've been very careful not to discourage and chill witness testimony, primarily the kind of witness participation where people aren't dragged into court by a subpoena but participate for other reasons in other ways. We need information to decide our cases and subjecting witnesses who can give us information to civil damages action without a textual basis in RICO or without a grounding in the Maryland cases, we'd be in all kinds of trouble. We'd be in trouble jurisprudentially and doctrinally, and we'd be in trouble in terms of the practical consequences that would flow from any kind of decision like this. May I respond, Your Honor? I'm out of time. I believe the federal cases and the state cases do not expand the immunity privilege to everything that's ever said during litigation. That grows out of the defamation context. It has grown into other torts and even into some contract actions. But even given that, it's never grown into a situation where somebody does what happened here today. And the case law from Briscoe, from the Chapel case in the Ninth Circuit, do say that Congress has the power to abrogate the witness immunity. And it says in the 1985 section, it did do that. But they haven't abrogated it here. And the point is, you're talking about RICO and the abrogation that you're talking about. And first, you know, you brought up 1503. And then that had to do purely with judicial proceedings. So you switched over. And then you talk about Section 1512. But Section 1512 of RICO does not have to do with abrogating witness immunity. It had to do all through with witness tampering. It didn't have to do with witness testimony. And you thought the abrogation was in Section 1512. But that doesn't deal with this. That's a witness tampering statute. And then, you know, you try to find it in 1505, which addresses obstruction of justice before administrative agencies. But the civil remedy in RICO doesn't cover violations of 1505. It doesn't. It doesn't cross-reference it. And that abrogation cannot be found for good reasons in the text of that statute, in any of the provisions that you're relying on. Again, I'm up. May I respond again, Your Honor, or no? You can respond here, or you've got some rebuttal time. You can do that, too. Whatever you wish. It's up to you. What underlying crimes do you rely on in RICO? Mail fraud and obstruction of justice under 1512C. Mail fraud and 1512C? Correct, Your Honor. Of Title 18? Correct. Of the criminal code? Correct, Your Honor. And 1341 of the criminal code? Those are the predicate crimes for a RICO offense. But did the district court address those things? No. The district court found a blanket immunity for any and all claims, for any and all statements. He didn't pick apart? Because those are, and that's a good point, because those are crimes. Well, they're the predicate crimes for the RICO claim. RICO has to have predicate crimes committed. Correct. In carrying it out. And any mail fraud offense or 1512C offense could be a predicate crime, and you've got to have at least two, I think. Correct. And Your Honor, I'll just say we moved for leave to amend the complaint. Judge Wilkinson is correct. Some of these things maybe pled a little poorly, but we did move for leave, and that was not granted or denied at the district court. Was it addressed? It was not addressed, in the opinion. But you still have to find in the statute that there is a civil cause of action created in the statute that abrogates this immunity. You still have to find that in the statute. RICO still has to create that. May I respond again, Your Honor? Or I can come back on rebuttal, if that's better. Yes. Go ahead, if you want. The RICO statute and the legislative history that's in our brief identifies that Congress was trying to create civil remedies, new civil remedies, things that are called imaginative civil remedies for victims of crimes like this. That is the text of itself. When the 1512C mail fraud conflict with the witness immunity, Congress has the power to supersede that. Well, did they do it? You're talking about their power. Have they done it here? They've done it in the statute because it conflicts. Have they done it here? I believe, yes, Your Honor. And what provision of the law does it here? 1512C2. Oh, well, RICO, the fact that RICO gave them the civil remedy is what does it for these subjects. Well, someone has to abrogate the witness immunity claim. Correct. And what does it here? The RICO and the predicate. So RICO bars, does away with witness immunity. To the extent that it's going to conflict with the predicate acts in RICO, RICO provides No, but it talks about witness tampering. It doesn't talk about abrogation of witness immunity. And the Sixth Circuit says there's no clear statement in RICO that abrogates the common law federal privilege. And so there would be a conflict with that circuit. And the other thing you're ignoring is when it's statutes in derogation of common law, which is what you want, because this was a common law privilege and a widely, widely recognized one, is the statutes and derogation of common law to be narrowly construed. And you're trying to construe it in an open-ended, broad way without the specific kind of support that you would need. And there is no doubt that Congress has the power to do it, but whether we have the power to charge in in the absence of congressional action, it comes back to Judge King's question. Did they do it here? And the specifics are lacking. Now, you've got some rebuttal time, and we'll call you for that. Thank you, Your Honor. Mr. Mathias. I want to start by addressing a point that was raised, not in the briefs, but this morning about the scope of the immunity or privilege. It's called a witness immunity or litigation privilege. It is not limited to testimony. The cases are very clear that it applies to judicial proceedings and quasi-judicial proceedings, as Mr. Nace acknowledged, and it goes to all of the activity of a witness in connection with their role as a witness. Now, you're talking about the privilege under state law of Maryland or under federal law? They're coextensive in that regard, so under both. But the... There are distinctions. There are distinctions between the state law and the federal law. Well, I'm not sure what you're referring to, Your Honor. Well, I'm just saying that. Okay. The... But... You know that. The privilege... Well, one distinction is that under Rehberg, the federal privilege is only applied to slander or libel-type claims, right? No, I would not agree with that, Your Honor. Rehberg actually says that it applies to any claim and cites Briscoe for that proposition. Under the federal law, the privilege... Well, the privilege applies to testimony, not to claim-by-claim accounts. It applies to the testimony itself. So the point, Your Honor, that I started out making was that the witness immunity or litigation privilege applies to the role of a person as a witness. The only role that Dr. Wheeler had here at all was as a witness in these proceedings. And in fact, he is subject... And this is in our brief below. It wasn't raised... Did he ever testify in any of these proceedings? He did, Your Honor. And... In administrative proceedings? In administrative... He didn't tell you? He was... I take that back. He was deposed in a proceeding. And under the administrative rules, the parties have the right to request the presence of an adverse witness or an adverse expert at a hearing before the ALJ. And so it's clear that... Nothing here happened in any federal court. Excuse me? Nothing here happened in any federal court. This all happened in a federal administrative proceeding? Nothing happened in a federal court. I agree, Your Honor. All right. They were in administrative proceedings, and they, for the most part, were written reports tendered to administrative bodies? That is correct. There were instances... And all that is essentially outside the record. All we've got here is a complaint, right? Yes. We have the complaint here and there were instances where there were depositions, but the point here is that the privilege applies to your role as a witness, and the things that you do in connection with your role as a witness. So... And it applies to quasi-judicial proceedings? It does apply to quasi-judicial proceedings, and that hasn't been raised. No contrary... They agree to that. I agree. I do want to address the point about Rayburg, and I will find the quote, I think. But in Rayburg, the court actually states that, it says, Briscoe made it clear, this is on page 367 of the Rayburg opinion, Briscoe made it clear that witness immunity extends beyond defamation. The public policy dictate is for truth-seeking and free testimony. And that's the focus. So... We're all for that. We're all for truth-speaking. And what they're saying is everything was false, it was phony. Well, Your Honor... It was conjured up. Certainly they are saying that, but that's something that can be said... That's what's in the complaint, that's what we got here. We're looking at the complaint, that's what it says in the complaint. And that is... I mean, a lot of the stuff we don't have, it's outside the record. But we do know that much. We do. And that's something that comes up with regard to every expert witness in any proceeding. It's not exactly a novel concept. You can claim every single expert witness in every single proceeding is testified falsely any time that the jury disbelieves it or whatever. There's no limiting principle here. And even if you get into a complaint, of course, there's Federal Rule 9 and Iqbal and Twombly that says there has to be some plaudibility to it. But at the same time, there's no limit to the way in which plaintiffs and defendants can strafe each other after the litigation by bringing collateral actions for damages on the grounds that something is assertedly false. But that's what we have cross-examination for. Well, in fact, I would say that every time you face an expert witness, some of your chief questions when looking at the report and their testimony is, are they objective? Have they applied the standards that apply to them correctly? Are they telling the truth? Are they just a hired gun for their side in the case? You frequently in administrative hearings have witnesses who appear over and over and over again on the same side of the types of disputes. The same thing is true with expert witnesses in medical malpractice cases or products liability cases. And I would submit that there's no principled way to make a decision here that the witness immunity does not apply in this one context and allows a cause of action where it wouldn't apply in those other contexts. And you would be opening the door to civil RICO becoming the cause of action of the day every time you don't like the testimony of an expert witness who's testified more than once. And about that civil RICO, you've alleged that it's not adequately, they don't adequately plead RICO enterprise in the complaint, right? Yes. What about the fact, opposing counsel just mentioned that he made a motion to amend the complaint that was never ruled upon one way or the other. If we find that the witness litigation privilege does not apply, the federal one doesn't apply, what about him going back to try to amend his complaint? It is correct that Judge Motz did not expressly say whether he was ruling on their leave to amend, but they had filed that motion months before. It's clear from his opinion, he believed that the witness privilege applied to all the claims and they have not made any showing of what it is that they would have pled. They didn't attach and amend it? No. Potentially amend a complaint? No. And I think on its face, I think this case begins and ends with the application of the witness immunity or litigation privilege. But even if you, and under Maryland law as to all the common law causes of action, in the reply brief it seemed as though they had essentially given up on those and focused their attention on the RICO claim. But even if you were to get beyond the witness immunity, they still have to have pled a proper RICO claim and there's nothing here to suggest that this is a properly pled RICO claim. So we could affirm on that basis? You could affirm on that basis and there are a number of courts. But the district court didn't address your claims on the RICO deficiencies? Well, but this is a de novo appeal and I think... Well, it is, but we'd be addressing things that the district court didn't address. He threw it out on the witness immunity or litigation privilege. He threw the case out on the litigation privilege in its entirety. And you raised issues about the sufficiency of the allegations of RICO, which the court didn't address. And even if we disagreed with Judge Mott on his handling of the litigation privilege in whole or in part, you would still have those issues to present. One of which Judge Thacker mentioned, you claim they don't sufficiently allege an enterprise. Right? Yes. And those issues are before this court though, Your Honor. And you say we could address them in the first instance if we wanted to. We can affirm on any basis we want to address. As a matter of fact, there have been courts that have taken that route. For instance, the Mera Scandari case, which was an appeal from a California federal district court, went to the Ninth Circuit and they didn't address the witness immunity, even though that had been the basis for the dismissal in the district court. And they said, we don't need to reach witness immunity because the RICO claim is plainly In terms of reading RICO, again, it's a statute in derogation of common law and you're not supposed to, you have to read that kind of thing narrowly. But, in addition, there just isn't any civil cause of action created in the statute. This cause of action that's brought under RICO is something that RICO didn't do. I agree, Your Honor. And what the other side has said is that Briscoe opens that door by focusing on the discussion there of Section 1985, which dealt with the statute during Reconstruction in 1871 that was focused explicitly on the problem in Reconstruction of perjury that was being, that the people were pressuring perjury, the KKK in the South was pressuring perjury. And that's what the language of the statute talks about. They take a witness tampering statute that's one of many provisions in RICO. They allege witness tampering, they allege 1512 of Title 18 and they allege 1341. 1341 is in the mail fraud statute. And that's what you need. You need two predicate acts. Not violation of two federal statutes. Two predicate acts. Two mail fraud offenses would do the job. Right, but they haven't attached... Satisfied. But no, but you're focusing on half of the allegation, 1512. Even if you're right on that, you haven't taken on the fact that mail fraud's not a federal crime, it's prosecuted every day. Well, yes, but if you look at the complaint, they haven't... And RICO has a civil aspect to it. There's civil RICO is viable under federal law, is pursued every day, but it has to make sufficient allegations, has to allege an enterprise. You say they didn't. The court didn't address that. The court didn't address, he didn't say, there's no RICO claim alleged. Did he? Well no, because he made the finding that under both federal and state law there's abrogation. He made a ruling about litigation privilege. Right. So it all goes out on litigation privilege. But to win, the plaintiffs have to show that RICO created a civil cause of action for some kind of testimony like this, and that the civil cause of action was intended. Not only was it created, but it was intended to abrogate the witness privilege. And if they don't do both of those, they lose. You're right, Your Honor. Their abrogation has to be either expressed or it has to be a situation where the statute is irreconcilable with the privilege. And there's no evidence that that was true here. And they don't cite a case for that. And there are cases that apply, federal cases that we cited that apply the witness privilege to RICO cases. I mean, Congress could do it, but the statute as it's presently written doesn't support this cause of action that's attempted here. And I thought the Sixth Circuit came down with a case, I seem to remember, that there wasn't any clear statement in RICO that created this cause of action or that was intended to abrogate the privilege. And they have to do both things to win. And if Congress thought that was appropriate to make an exception to RICO for perjury or alleged false testimony, they could do so, but they haven't done so. And that was not litigated in the district court. None of this was litigated in the district court. The district court dealt with the litigation privilege as it existed under Maryland law. And federal law, Your Honor. And federal law. He dealt about Maryland law. He did mention both and said that it applies under both. And with regard to the Black Lung Program itself, look, this case is not about the tragedies from a terrible disease. As you know, you've lived your whole life in West Virginia. But in a case like this, the administrative process can be amended, can be changed if there are problems with it. And in fact, as is in the record, in this case, when information about Dr. Wheeler came out that led to this complaint, they did go back to the Department of Labor made changes and allowed hearings to be reopened. Whether that was satisfactory to the claimants here or not is not something that should be litigated here in this context in blaming a witness for something that they think that the Department of Labor and the administrative process didn't adequately address. It's just so far removed. And the precedent that we would be setting by unsatisfied litigants going after adverse witnesses for civil remedies is, I submit, a terrible, terrible precedent to set. And I don't think RICO turns here. I understand that Judge Motz did not address it in his opinion. But RICO doesn't turn on legal niceties here. The entire complaint is about something Dr. Wheeler did or allegedly did. There's no enterprise. There's no racketeering. There's no crime here other than saying what he did as a testifying witness. And that's something that the law is clear you are not allowed to use to bring a claim against somebody. That's what the immunity means. So if I believe in responding to your questions, I've addressed the points I wanted to make. I did want to just reemphasize, although I'm sure you're aware of it, because it came up in their reply, the idea that you can get around the witness immunity that says you can't go after a witness by, that you can get around it by alleging a conspiracy. The Rayburg case and the seven other circuits before Rayburg have all addressed that. And pretty clearly, that is not a way around the witness privilege. So unless your honors have anything else. Thank you very much for your time. Thank you, your honors. I do want to address the Sixth Circuit and the Cullinan opinion, your honor. I believe that's what you're referring to. We referenced it in our reply brief. The Sixth Circuit did not find that witness immunity applied to Rico. I know that they stated early on that there was one reason to believe that. They went, the opinion continued, and it said there are reasons not to believe that. And ultimately, they said we are not going to decide that issue today. So the Sixth Circuit did not find that. The Ninth Circuit in the Chappell case looked at a similar issue with a legislative immunity regarding bribery, and bribery being a predicate act under Rico. I thought the Sixth Circuit held that the abrogation litigation privilege did apply to claims under 1983 and civil Rico. I refer you to our reply brief, your honor. It did not apply the witness immunity, absolute witness immunity, to the Rico provision, to the Rico claim. What did the Ninth Circuit rule? The Ninth Circuit ruled, first of all, that I think, as we all agree, Congress does have the power to abrogate this. Then the Ninth Circuit looked at the predicate act itself of bribery, as well as the legislative immunity. And they said, does this evidence and intent to, does the bribery predicate act evidence and intent to abrogate that legislative immunity? Ultimately, the Ninth Circuit said, well, bribery is- Here, in Cullinan, it says that the court ruled, and quote, section 1983 was not intended to abolish this immunity. And we've been given no reason to suppose that Rico was intended to abolish it either. It would be anomalous, we think, if officials who are immune from suit for alleged violations of Constitution itself should be denied immunity from suit for incorporate the Constitution, particularly a statute as amorphous as Rico. And that's quoting from the Ninth Circuit opinion. It is, your honor, and I refer you later on in the opinion, they say we will pretermit that question until a later time. It just is a matter, I think, of respecting, with respect to this Rico, of respecting Congress and what Congress, as Judge King earlier pointed out, Congress can do it if Congress wants to do it. But the question is, have they done it here? And I just can't find any indication that they created this kind of civil cause of action for this particular offense, or that they intended to abrogate an immunity that is so unconstitutional in the federal justice system. I mean, we are putting words, you're asking that we put words in Congress's mouth. And they're not there. I'm not trying to do that, your honor. Congress created Rico, gave civil remedies to victims of these crimes, including enlisted the predicate acts that people could provide a civil action for. One of them is mail fraud, one of them is obstruction of justice. What did the Ninth Circuit rule? You still haven't told me. I'm sorry, your honor. The Ninth Circuit ruled that bribery is not part of the legislative process. So because bribery is not part of the legislative process, those acts weren't even subject to legislative immunity. On the other side, they said, if they're really complaining about what they did- Was it the rule on witness immunity? No, the chapel, which is one of the cases that they- They dealt with legislative immunity. Yes, your honor, slightly different. All right. So, but there is, in the Ninth Circuit, there is evidence that they found that Congress has the power to do this, as I think Judge Wilkins and you agree. They do have the power. And they looked to the statute to see if the statute conflicted with the witness immunity. And if it did, they would have found, I suggest they would have found that that is evidence of an intent to give a remedy to these people. Mr. Barr and Mr. Day, setting aside witness immunity for one second. Set aside what- How can we just set it aside? Because if they can plead RICO with these predicate acts, and there's no witness immunity, then they have that claim. Now, if witness immunity, part of the common law, conflicts with that, that cannot supersede what Congress has provided them. So the question is, has Congress provided them this civil action? You know, all this case law you're citing is far afield. You're citing government contractor cases, and you're citing cases that didn't involve any kind of witness testimony at others. You're citing cases like Mangold, where witness immunity was not involved, and Adams v. Peck, where testimony was not involved. And then you're citing other cases like Barr, which actually expanded the witness immunity. But in reading those cases that you excited, you are taking liberties with the case law, because none of it is on point. I'm out of time, Your Honor, if you want me to respond. Yes, you may respond. I think the case law is rather limited on this. No one has provided a case in which witness immunity applied to the predicate acts that we have brought today. The Maryland cases have repeatedly recognized this privilege, and outside the context of defamation, because the reasons of encouraging witness testimony don't simply disappear when you have a non-defamation suit. They apply regardless of the subject of the suit. You want to encourage people to testify without the pain of a civil action, which will be brought in many, many cases where the witness testimony is run-of-the-mill. It'll be used as a club. But that's, at any rate, I think we know what your position is, and I think we know what the opposing counsel's position is. We thank you for your argument, and we will adjourn court, and we'll be happy to come down and greet you. Thank you. The honorable court adjourns until tomorrow morning. God save the United States and the honorable court. Thank you.
judges: J. Harvie Wilkinson III, Robert B. King, Stephanie D. Thacker